UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| SASHA BEGUM NORMAN, et al., | ) |
| *Plaintiffs*, | ) |
| | ) No. 5:19-cv-00494-XR |
| v. | ) |
| | ) |
| BODUM U.S.A., INC., | ) ORAL ARGUMENT REQUESTED |
| | ) |
| *Defendant*. | ) |

**DEFENDANT BODUM U.S.A., INC.'S REPLY IN SUPPORT
OF ITS MOTION TO STRIKE NEW POST-DISCOVERY,
POST-DISCLOSURE DECLARATION OF WILLIAM A. LINGNELL**

This is a products liability action involving injuries sustained by a minor child while improperly using a Bodum French Press coffee maker. Plaintiff's theory of liability is that the French Press's glass carafe fractured due to a scratch on its interior surface allegedly caused by contact between the plunger assembly's steel spring and the inside of the glass. There is, however, no evidence in the record showing any scratch on the interior of the glass carafe at issue, and no evidence in the record showing that the fracture originated on the interior of the glass carafe. To the contrary, the uncontroverted evidence before the Court establishes that that the fracture originated on the exterior of the glass carafe, ruling out as a factual matter Plaintiffs' liability theory. For these, and the other reasons set forth in its briefing, Bodum U.S.A., Inc. ("Bodum") moves for summary judgment on Plaintiffs' claims pursuant to Fed. R. Civ. P. 56 (ECF No. 38); to strike the expert report of Plaintiffs' lone liability expert, William Lingnell pursuant to Fed. R. Civ. P. 26(a)(2)(B) and 37(a)(4) ("Motion to Strike") (ECF No. 37); and to exclude the testimony of Mr. Lingnell pursuant to Fed. R. Evid. 702 and *Daubert v. Merrell Dow. Pharm, Inc.*, 509 U.S. 579 (1993) ("*Daubert* Motion") (ECF No. 39). Those motions are fully briefed and submitted.

This reply addresses Plaintiffs' response to Bodum's Motion to Strike New Post-Discovery, Post-Disclosure Declaration of William A. Lingnell ("Motion to Strike Lingnell Declaration"), which was included in Bodum's Combined Reply in Support of its Motion to Strike Expert Report of William A. Lingnell (ECF. No. 53). Bodum's Motion to Strike Lingnell Declaration arose due to Plaintiffs' submission of an 18 page declaration from Mr. Lingnell in their combined response to Bodum's *Daubert* Motion and Motion to Strike (ECF No. 47). Mr. Lingnell's Declaration materially contradicts his deposition testimony in this case and includes new opinions, information, and analysis that were not disclosed during discovery. Mr. Lingnell's Declaration should, therefore, be struck pursuant to Fed. R. Civ. P. 37(c)(1).

1.      Fed. R. Civ. P. 26(a)(2)(B) not only requires disclosure of an expert's opinions in his written report, but also the "basis and reasons for them" and "the facts or data considered by the witness in forming them." Rather than burden the Court with a line-by-line refutation of Plaintiffs' Response, Bodum respectfully submits that the submission of an *18 page* declaration by an expert witness after the close of discovery, and in response to pending dispositive motions, is inherently suspicious. This is especially true where, as here, the declaration contains specific opinions, data, calculations, and analyses that are noticeably absent from the expert's written report and which he could not provide during deposition in response to explicit questioning. *See* ECF No. 53 at 6-9.

Indeed, the mere fact Plaintiffs commissioned and relied upon the Lingnell Declaration in opposing Bodum's Motion to Strike and *Daubert* Motion, rather than Mr. Lingnell's expert report or deposition testimony, is the best evidence that the opinions and information in the Lingnell Declaration are nowhere to be found in the record. Far from merely clarifying his disclosed opinions, the Lingnell Declaration contains figures, calculations, testing, analysis, and data points

that are not included in his expert report and which he was unable to provide during his deposition. To the extent Lingnell now claims that his opinions in this case (new or otherwise) are based on the "facts or data" disclosed for the first time in his Declaration, that is a clear and blatant violation of Rule 26(a)(2)(B). The Federal Rules of Civil Procedure, as well as this Court's scheduling orders, govern the disclosure of expert opinions and the bases of those opinions. The Lingnell Declaration is too much too late and should be struck pursuant to Fed. R. Civ. P. 37(c)(1).

2.      In their Response, Plaintiffs take issue with Bodum's argument that the Lingnell Declaration contradicts his deposition testimony with respect to whether his physical testing of the subject French Press showed actual contact between the steel spring and the interior of the glass carafe. ECF No. 57 at 2-3 ("Bodum tries to paint Lingnell's deposition testimony as saying his physical testing of the French Press *did* involve the spring touching the glass.") (emphasis in original). Plaintiffs correctly note that, in his Declaration, Mr. Lingnell states that he "partially inserted the subject plunging assembly '[w]ithout touching the subject carafe.'" *Id.* at 3. Plaintiffs then cite a single sentence from Mr. Lingnell's deposition that they misleadingly interpret as him disclaiming any actual contact between the steel spring and the interior of the glass carafe:

> Q:   So you did in fact measure the protrusion of the spring outward from the plunger to determine if it was long enough to make contact with the glass?
>
> A:   Well, we actually physically put it in and could [see] that it would.

*Id.* (quoting ECF No. 57, Ex. A at 245:17-22).

On first blush, it is seems rather anomalous that Plaintiffs would go to such lengths to deny that their glass expert observed contact between the steel spring in the subject French Press and the glass carafe. After all, their entire theory of liability rests upon the untested hypothesis that such contact not only occurred, but caused a scratch of sufficient dimension to cause the borosilicate glass carafe to fracture due to thermal stress. Why, then, would Plaintiffs seek to

convince the Court that no such contact was observed? The answer is simple. Mr. Lingnell testified under oath that he did, in fact, observe contact when the subject plunger assembly was inserted in the glass carafe, *but the contact resulted in no scratches or other damage to the carafe.*

> Q: You put [the subject plunger assembly] into the subject carafe or you put it into . . . the other beaker? You put it into the broken one?
>
> A: Yes.
>
> Q: Did you put it into the exemplar beaker?
>
> A: I believe we did also. It would have---.
>
> Q: Is that referenced in your report anywhere?
>
> A:  No.
>
> Q: Do you have photographs anywhere showing contact between the spring and the plunger and the side of any glass carafe?
>
> A: No, there's photographs in there with regard to the spring, the part that sticks out. We've got that in the report, I believe.
>
> Q: …Do you have a picture of it actually touching the glass?
>
> A: I don't believe we do.
>
> Q: Do you have a video? Did you take a video of using the French press, moving this plunger up and down the cylinder or inserting it into the carafe showing actual contact between metal and glass, the mesh spring and the glass?
>
> A: No, we don't have a video.
>
> ***
>
> Q: *Did you actually observe that the rough end of the flexible spring made contact with the glass directly? Did you observe that yourself?*
>
> A: *I did.*
>
> ***

> Q: *It is my understanding that you testified a moment ago that you were able to achieve metal-on-glass contact from that rough edge of the spring by taking the plunger assembly from the subject matter French press and inserting it into a glass carafe.*
>
> A: *Yes.*
>
> Q: *When that happened, did you observe any damage?*
>
> A: *I didn't at the time that we did that, no.*
>
> Q: Okay. How many times did you observe that phenomenon of contact during the insertion of the assembly into the beaker?
>
> A: I don't know the exact number. We worked it back and forth. We knew that it could hit the rim of the glass in the exemplar, and we did it enough times to know that it could happen.
>
> Q: So a large enough sample size to persuade you that it was possible for that to occur during normal use. Is that fair?
>
> A: Yes.
>
> Q: *But in any of the times that you did it, none of those times led to actual damage to the carafe?*
>
> A: *Correct.*

*See* Dep. of W. Lingnell, 12/8/2020, at 245:17-246:25, 249:2-5, 264-17-265:16 (relevant portions attached as Exhibit A) (emphasis added).[1]

---

[1] Bodum presents the Court with this excerpt from Mr. Lingnell's deposition to show that his sworn testimony contradicts his sworn Declaration, and to generally show his opinions and methodologies are unreliable. Because the alleged testing described by Mr. Lingnell is not referenced or documented in his expert report, however, and is now even disclaimed by Plaintiffs themselves, it is unreliable and inadmissible pursuant to Fed. R. Evid. 702 and *Daubert*. Even if the Court were to take this alleged testing at face value, it contradicts Mr. Lingnell's hypothesis that mere contact between the steel spring and the glass carafe can cause a scratch, let alone one large enough to result in failure of borosilicate glass due to hot water. In other words, there is no competent, admissible evidence that such contact occurs during normal use or that such contact, if it occurs, can damage the borosilicate glass. To the contrary, the only evidence (admissible or otherwise) on that issue shows that it will not. Of course, all of this is moot because the uncontroverted evidence establishes that the fracture originated on the exterior of the glass carafe, dispositively ruling out Plaintiffs' (and Lingnell's) theory of liability.

In other words, Mr. Lingnell testified under oath during his deposition that he conducted physical testing of the subject French Press and observed actual contact between the steel spring and the glass carafe, but did not reference or document that testing in any way in his expert report. He then prepared and signed a Declaration (also under oath) where he denied observing any contact between the steel spring and the glass carafe. This contradiction not only establishes that the Lingnell Declaration is a sham, but demonstrates the complete lack of reliability of Mr. Lingnell's opinions and the methods he used to reach them—as shown in Bodum's *Daubert* Motion. For this reason alone, the Lingnell Declaration should be struck.

## CONCLUSION

For the foregoing reasons, as well as those set forth in its opening brief (ECF No. 53), Bodum respectfully requests that the Court strike the Declaration of William A. Lingnell submitted by Plaintiffs as Exhibit A to their combined response to Bodum's *Daubert* Motion and Motion to Strike (ECF No. 47. Ex. A), and for all other relief the Court deems warranted.

DATED: April 5, 2021.

Respectfully submitted,

By:   /s/ Jason A. Wheeler
Jason A. Wheeler
Missouri Bar No. 52298
*Admitted Pro Hac Vice*
THOMPSON COBURN LLP
One US Bank Plaza
St. Louis, Missouri 63101
Telephone: (314) 552-6000
Facsimile: (314) 552-7000
jwheeler@thompsoncoburn.com

- and -

Jeffrey S. Hawkins
State Bar No. 09249100
Ben Zinnecker
State Bar No. 24066504
GERMER BEAMAN & BROWN PLLC
One Barton Skyway
1501 S. Mopac Expressway, Suite A400
Austin, Texas  78746
Telephone:  (512) 472-0288
Facsimile:  (512) 472-0721
jhawkins@germer-austin.com
bzinnecker@germer-austin.com

***Attorneys for Defendant***
***Bodum U.S.A., Inc.***

### CERTIFICATE OF SERVICE

This instrument was served on the following counsel in compliance with Rule 5 of the Federal Rules of Civil Procedure on April 5, 2021:

Guy Watts
Meredith Drukker Stratigopoulos
Mikal C. Watts
WATTS GUERRA, LLP
811 Barton Springs Rd., Ste. 725
Austin, TX  78704
(512) 479-0500 (fax)
gwatts@wattsguerra.com
mdrukker@wattsguerra.com
mcwatts@wattsguerra.com
*Counsel for Plaintiffs*

    */s/ Jason A. Wheeler*
    Jason A. Wheeler